UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| GENERAL LINEN SERVICE, INC.<br><br>Plaintiff,<br><br>v.<br><br>GENERAL LINEN SERVICE CO., INC.<br><br>Defendant. | Case No. 12-cv-111 |

For its Complaint, plaintiff General Linen Service, Inc. alleges as follows:

**Parties**

1. Plaintiff General Linen Service, Inc. ("General Linen") is a Massachusetts corporation with its principal place of business in Newburyport, Massachusetts.

2. Defendant General Linen Service Co., Inc. is a New Hampshire corporation with its principal place of business in Somersworth, NH. Defendant will be referred to as "GL Somersworth" in this complaint.

**Jurisdiction and Venue**

3. General Linen's claims arise under the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.) and under state law.

4. This Court has jurisdiction under 28 U.S.C. §1331 because violation of the Computer Fraud and Abuse Act is a question of federal law.

` 5. The Court also has jurisdiction over General Linen's state law claims under 28 U.S.C. §1332, because a diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because GL Somersworth has its principal place of business within the district.

**Background Facts**

7. The parties are competitors in the business of providing linens – including work uniforms, table cloths, and napkins – to restaurants and other businesses.

8. General Linen has contracts with its customers that specify the type and quantity of linens to be provided, a delivery/retrieval schedule, and price for the services. General Linen's customer list comprises highly sensitive competitive information, and is subject to efforts to keep it confidential. Accordingly, General Linen's customer list and the details of its contractual arrangement with its customers are trade secrets.

9. General Linen uses software licensed from Alliant Systems, Inc. ("Alliant") to handle its billing and invoicing.

10. GL Somersworth also contracts with Alliant for similar services in connection with its customers and accounts.

11. On its website, General Linen offers its customers the ability to log-in to their account information to view invoices and account details and to make payments. General Linen refers to this functionality as the "Web Portal." Not every customer uses the Web Portal, but for those that do, logging in provides access only to their own account information. Only high-level personnel at General Linen and Alliant have authorized access to account information for multiple customers.

12. On or about April 1, 2010, General Linen's customer, 1640 Hart House ("Hart House"), called to say that a salesman from GL Somersworth, Ronald Warner, had given it a package of General Linen's invoices with its other customers. Mr. Warner used these invoices in his sales pitch by comparing prices for General Linen's other local customers in an attempt to solicit 1640 Hart House away, e.g., "General Linen is charging 'X' less to these other customers."

13. Hart House delivered the invoice copies to General Linen, and General Linen inspected them. Because customers have access only to their own invoices, General Linen suspected that something must have gone amiss with the Web Portal – that somehow, access had been obtained to multiple customer accounts through the website.

14. General Linen requested from Alliant a log file showing the user names and login dates and times for the Web Portal. When he inspected the results, General Linen's General Manager, Scott Van Pelt, noticed that a user name "admin" showed up in several places. Because no one at General Linen uses the name "admin" to access the accounts, Mr. Van Pelt asked Alliant to explain.

15. Alliant stated that it had created the "admin" user account to allow for maintenance and troubleshooting of General Linen's account. It agreed with Mr. Van Pelt that the "admin" user had logged in on several occasions to General Linen's accounts.

16. From the files Alliant provided, General Linen was also able to determine the IP address of each user who logged in to the Web Portal. The "admin" user had logged in from the IP address 72.8.19.82.

17. Mr. Van Pelt searched publically available databases (www.ipaddressreport.com) and determined that the address 72.8.19.82 was associated

with the hostname "mail2.generallinen.com." A further search of the "whois" database revealed that the "generallinen.com" domain is registered to GL Somersworth, in Somersworth, NH.

18. Mr. Van Pelt promptly instructed Alliant to close the "admin" user name. Subsequent review of the log files shows that GL Somersworth, from the same IP address, made several more attempts, without success, to log in to General Linen's account.

19. Mr. Van Pelt spoke with Jeff Belcher of Alliant about his findings. Mr. Belcher agreed with Mr. Van Pelt's conclusions about the unauthorized access GL Somersworth had obtained, and stated that Alliant had needed to speak with GL Somersworth on previous occasions about misuse of proprietary information.

20. As a result of GL Somersworth's unlawful access to General Linen's computer accounts, and its use of that information in soliciting General Linen's customers, General Linen has lost several customers entirely, and been forced to lower the rates charged to several other customers. Several of these customers are located in New Hampshire. General Linen's damages are in excess of $75,000.

### Count One – Violation of 18 U.S.C. § 1030

21. General Linen incorporates herein the allegations of paragraphs 1 through 20.

22. General Linen's computer servers are "protected computers" as that term is defined in the Computer Fraud and Abuse Act ("CFAA"), because they are used in interstate commerce – chiefly, between General Linen's operations in Massachusetts and its customers throughout New England.

23. GL Somersworth accessed General Linen's protected computers without authorization, and used that illegal access to obtain General Linen's trade secret customer data.

24. General Linen has been damaged by GL Somersworth's unauthorized access to its customer data well in excess of the $5,000 threshold prescribed by 18 U.S.C. 1030 (C)(4)(A)(i)(I).

25. GL Somersworth thus violated the CFAA (18 U.S.C. 1030(a)(2)(C)) and is liable to General Linen for the economic harm it suffered as a result of that violation.

### Count Two – Violation of the Consumer Protection Act

26. General Linen incorporates herein the allegations of paragraph 1 through 25 of the Complaint.

27. GL Somersworth is engaged in trade or commerce as that term is defined in RSA 358-A:1, II.

28. GL Somersworth's actions, taken in the state of New Hampshire, in gaining unauthorized access to General Linen's trade secret customer data, and then using that data to interfere with General Linen's customer relationships, was an unfair method of competition.

29. General Linen is entitled, pursuant to RSA 358-A:10, I, to its actual damages or $1,000, whichever is greater.

30. GL Somersworth's acts were willful or knowing. Accordingly, General Linen is also entitled to as much as 3 times, but not less than 2 times, its damages.

31. General Linen is also entitled to its costs and reasonable attorneys' fees.

### Count Three – Trade Secret Act (N.H.R.S.A. §350-B *et seq.*)

32. General Linen incorporates herein the allegations of paragraph 1 through 31 of the Complaint.

33. General Linen's customer account data are trade secrets, as that term is defined in RSA 358-B:1, IV.

34. GL Somersworth misappropriated General Linen's trade secret information through improper means when it accessed General Linen's computers without authorization.

35. GL Somersworth had reason to know that it was accessing General Linen's protected, trade secret information, because its account information was plainly labeled with its name, and GL Somersworth then used that information to target General Linen's customers.

36. General Linen is entitled to damages for GL Somersworth's misappropriation of its trade secrets.

37. GL Somersworth's misappropriation was willful and malicious. As a result, General Linen is also entitled to exemplary damages of twice its actual damages.

38. General Linen is also entitled to its reasonable attorneys' fees under RSA 350-B:4, III.

### Count Four – Intentional Interference with Contract

39. General Linen incorporates herein the allegations of paragraph 1 through 38 of the Complaint.

40. General Linen had longstanding contractual relationships with a number of customers.

41. GL Somersworth used the trade secrets of General Linen that it wrongfully obtained from General Linen's computers to convince certain of General Linen's customers that they were being overcharged, and to switch their business to GL Somersworth instead.

42. GL Somersworth's efforts in this regard were improper, because they relied on misappropriated trade secrets.

43. General Linen has been damaged by GL Somersworth's interference with its contractual relationships in an amount to be proven at trial.

WHEREFORE, General Linen respectfully requests that the Court:

A. Find GL Somersworth liable for breach of the Computer Fraud and Abuse Act, the Consumer Protection Act, and the Uniform Trade Secret Act, and that it improperly interfered with General Linen's contractual relationships;

B. Grant General Linen its actual damages;

C. Award double or treble damages under the Consumer Protection Act or the Uniform Trade Secret Act;

D. Award General Linen its attorneys' fees in pursuing this action; and

E. Award such other and further relief as justice requires.

Respectfully submitted,

**ORR & RENO, P.A.**

Dated: March 23, 2012        By:    /s/ James F. Laboe
                                    James F. Laboe (NHB #14571)
                                    Jeffrey C. Spear (NHB #14938)
                                    P.O. Box 3550
                                    Concord, New Hampshire 03302-3550
                                    Telephone: (603) 224-2381

7

Facsimile: (603) 223-2318

Doc No. 861653