UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

General Linen Service, Inc.

    v.                                               Civil No. 12-cv-111-LM
                                                           Opinion No. 2014 DNH 130
General Linen Service Co., Inc.


**O R D E R**

General Linen Service, Inc. brings suit against General
Linen Service Co., Inc., asserting various state law claims and
a claim under the Computer Fraud and Abuse Act.  Defendant
asserts five counterclaims, seeking cancellation of the
plaintiff's trademark (Counts I and II) and alleging claims for
violation of the New Hampshire Consumer Protection Act, N.H.
Rev. Stat. Ann. ch. 358-A (Count III), intentional interference
with contractual relationships (Count IV), and "Unfair
Competition and Deceptive Trade Practices under the Common Law
and the Lanham Act" (Count V).  Plaintiff moves to dismiss
Counts I, II, III, and V of the counterclaims.  Defendant
objects.

**Background**[1]

Defendant, General Linen Service Co., Inc. is a company
located in Somersworth, New Hampshire, which provides linen and

---

[1] The background is taken from the allegations in the
defendant's counterclaims viewed in the light most favorable to
defendant.

uniform rental services to the healthcare, restaurant, and hospitality communities in New England. For purposes of this order, the court will refer to defendant as "GL Somersworth." Plaintiff, General Linen Service, Inc. is a company located in Newburyport, Massachusetts, which provides similar services in New England. The court will refer to plaintiff as "GL Newburyport."

On October 27, 2005, GL Newburyport filed a federal trademark application with the United States Patent and Trademark Office ("PTO"), Serial No. 78741710, for the mark "GENERAL LINEN SERVICE" used in connection with rental of table linens and uniforms ("GLS mark"). In the trademark application, GL Newburyport claimed that, to the best of its knowledge and belief, no other person, firm, corporation or association had the right to use the GLS mark in United States commerce, and that it had been using the mark in United States commerce since January 1, 1933.

On May 3, 2006, the PTO issued an "Office Action," in which it refused to register the GLS mark because the mark was "merely descriptive" of GL Newburyport's services described in the trademark application. On October 2, 2006, GL Newburyport submitted a response to the Office Action. As part of its response, GL Newburyport included the sworn affidavit of its president, Diane Whitney Wallace, who stated that "the term

'GENERAL' has become distinctive of the goods and/or services through GL Newburyport's substantially exclusive and continuous use [of the term] in commerce for at least five years immediately before the date" of the affidavit.

On February 27, 2007, "the PTO granted registration for the [GLS mark] to GL Newburyport." On April 9, 2010, GL Newburyport sent a cease and desist letter to GL Somersworth based upon its claim of exclusive rights in the name GENERAL LINEN SERVICE. The letter asserted rights based on GL Newburyport's Federal Registration, and demanded that GL Somersworth cease and desist from using the GLS mark.

On October 24, 2012, GL Newburyport filed with the PTO an affidavit of continued use and incontestability of the GLS mark ("affidavit of continued use"). The affidavit stated that the mark was in continuous use for five consecutive years after the date of registration. The PTO subsequently granted incontestable status to the GLS mark.[2]

_____

[2] GL Somersworth alleges that "the PTO granted incontestable status to the [GLS mark] on February 27, 2007," the date the PTO granted registration for the mark. Counterclaims ¶ 41. It appears, however, that the GLS mark could obtain incontestable status no earlier than February 27, 2012, five years after it was first registered. See Dorpan, S.L. v. Hotel Melia, Inc., 728 F.3d 55, 62 (1st Cir. 2013) ("Incontestibility [sic] is a status created by Section 15 of the Lanham Act, which provides that once a mark has been registered and in continuous use for five consecutive years without an adverse ruling against the holder, the registrant may file an affidavit of incontestibility [sic] with the USPTO."). Therefore, the court assumes that the

GL Somersworth alleges that GL Newburyport made intentional misrepresentations in the trademark application, the response to the Office Action, and the affidavit of continued use.  GL Somersworth alleges that, despite GL Newburyport's representations to the contrary in its submissions to the PTO, GL Newburyport knew that its use of the GLS mark was not "substantially exclusive" and that it had not continuously used the mark for either the five years prior to the response to the Office Action or the five years prior to the affidavit of continued use.  In addition, GL Somersworth alleges that the terms "General," "Linen," and "Service" do not qualify for trademark registration because the mark is too generic and/or has not gained any secondary meaning.

## Standard of Review

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all factual allegations contained in the counterclaims.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In assessing counterclaims for purposes of a motion to dismiss, the court "separate[s] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a

_____

PTO granted incontestable status to the GLS mark sometime after October 24, 2012, the date on which GL Newburyport filed the affidavit of continued use.

plausible, not merely conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotation marks omitted).  "If the facts alleged in [the counterclaims] allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, the claim has facial plausibility."  Id. (internal quotation marks omitted).

## Discussion

GL Somersworth alleges five counterclaims: Cancellation of GL Newburyport's Federal Trademark Registration on the Basis of Fraudulent Procurement (Count I); Cancellation of GL Newburyport's Federal Trademark Registration on the Basis of Genericness (Count II); Violation of the New Hampshire Consumer Protection Act (Count III); Intentional Interference with Contractual Relationships (Count IV); and "Unfair Competition and Deceptive Trade Practices under the Common Law and the Lanham Act" (Count V).  GL Newburyport moves to dismiss Counts I, II, III, and V.

### A. Count I – Fraud in the Procurement

GL Newburyport argues that Count I should be dismissed because GL Somersworth's allegations are based on "information and belief."  GL Newburyport also contends that Count I should be dismissed because GL Somersworth fails to allege that it had

superior legal rights in the GLS mark or that, even if it did, that GL Newburyport knew of GL Somersworth's superior rights.

"15 U.S.C. § 1064 provides that 'any person who believes that he is or will be damaged' may file a petition 'to cancel a registration of a mark' for which 'registration was obtained fraudulently.'" MPC Franchise, LLC v. Tarntino, --- F. Supp. 2d. ---, No. 11-CV-6310, 2014 WL 1920531, at *15 (W.D.N.Y. May 14, 2014); see also Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F. Supp. 2d. 205, 220 (D. Mass. 2007). "The elements of a claim of fraud in the procurement of a federal trademark registration include: (1) that defendant made a false representation to the PTO regarding a material fact; (2) that defendant knew that the representation was false; (3) that defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." Colon-Lorenzana v. S. Am. Rests. Corp., No. 12-1794, 2014 WL 1794459, at *3 (D.P.R. May 6, 2014); see also 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 19:48 (4th ed. 2008); San Juan Prods., Inc. v. San Juan Pools of Kan., Inc., 849 F.2d 468, 473 (10th Cir. 1988). "The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration." Soc'y of

6

Accredited Marine Surveyors, Inc. v. Scanlan, No. 01-11877-GAO, 2005 WL 670541, at *4 (D. Mass. Mar. 23, 2005); see also In re Bose Corp., 580 F.3d 1240, 1243 (Fed. Cir. 2009).

### 1. Allegations Based on Information and Belief

A "plaintiff[] must state the circumstances constituting fraud in the procurement of a registered trademark with particularity in accordance with Federal Rule of Civil Procedure 9(b)." Colon-Lorenzana, 2014 WL 1794459, at *4; see also La Cena Fine Foods, Ltd. v. Jennifer Fine Foods, No. 01-CV-5746, 2006 WL 2014503, at *4 (D.N.J. July 18, 2006). "[T]he pleader must state with sufficient specificity the factual bases for its allegation," and the pleadings must "contain explicit rather than implied expression of the circumstances constituting fraud." San Juan Prods., 849 F.2d at 472. "Rule 9 imposes a heightened pleading requirement for allegations of fraud in order to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (citing McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228-29 & n.2 (1st Cir. 1980)).

GL Newburyport argues that GL Somersworth has not met Rule 9(b)'s heightened pleading requirements.  GL Newburyport contends that a claim for fraudulent procurement of a trademark containing allegations based on information and belief must set forth the facts on which the belief is founded, which the counterclaims fail to do.  It cites as an example paragraph fourteen of the counterclaims, which states: "On information and belief, at the time of the filing of [the application], GL Newburyport had actual knowledge that it had not used the identical mark GENERAL LINEN SERVICE in U.S. commerce since 1933."  It argues that allegations such as those contained in paragraph fourteen are insufficient to state a claim for fraudulent procurement of a trademark because GL Somersworth does not provide any source for the information or reasons for the belief.

GL Newburyport is correct that a party alleging fraud in the procurement of a federal trademark based "on information and belief" must "state the facts on which the belief was founded." Iowa Health Sys. v. Trinity Health Corp., 177 F. Supp. 2d 897, 916 (N.D. Iowa 2001); see also Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1331 n.7 (Fed. Cir. 2009); McGinty, 633 F.2d at 228.  GL Somersworth, however, satisfied that requirement.  For example, the allegation cited in GL Newburyport's motion to dismiss, that GL Newburyport knew that

it had not used the GLS mark continuously since 1933, is
supported by allegations concerning GL Newburyport's website and
its display of a different mark since at least 2003.  See
Counterclaims ¶¶ 22-26.  As another example, GL Somersworth's
allegation based "on information and belief" that GL Newburyport
knew at the time of the trademark application that it was not
the substantially exclusive user of the GLS mark, see id. ¶¶ 13,
28, is supported by allegations that GL Somersworth, a
competitor of GL Newburyport, had used the same mark since at
least 1938, see id. ¶ 4.

       The cited statements in the counterclaims are sufficient to
allege fraudulent procurement of a trademark based on
information and belief.  See Meckartzer Lowenbrau Benedikt Weib
KG v. White Gold, LLC, 95 U.S.P.Q.2d 1185, 2010 WL 1946273, at
*3 (T.T.A.B. May 13, 2010) ("[P]etitioner has sufficiently
alleged fraud.  Its allegations are not based solely on
'information and belief,' but are also based on the results of
an investigation which, petitioner alleges, revealed that
respondent was not using its mark on all of the goods listed in
its Statement of Use at the time the Statements of Use were
filed."); cf. Iowa Health Sys., 177 F. Supp. 2d at 916-177
(holding that allegations of fraud in procuring a trademark
based on information and belief were insufficient when the
plaintiff failed to plead a factual basis for allegations that

third parties had superior rights to use the defendant's mark or
its allegations that the defendants did not provide the services
it declared to the PTO it provided).

In it's reply, GL Newburyport further argues that "there
are no specific allegations that GL Newburyport knowingly made
false, material misrepresentations of fact in procuring the
trademark registration with the intent to defraud the USPTO."
"This court ordinarily does not consider argument raised for the
first time in a reply memorandum . . . ." Contour Design, Inc.
v. Chance Mold Steel Co. Ltd., 09-cv-451-JL, 2011 WL 1564612, at
*6 (D.N.H. Apr. 25, 2011).  Even if GL Newburyport had raised
that argument in its motion to dismiss, however, it is without
merit.  The counterclaims allege that GL Newburyport made
several misrepresentations in various submissions to the PTO in
order to obtain a trademark registration to which it was not
entitled.  Such allegations are sufficient to allege scienter
and intent to deceive.  See Burnscraft Mfg. Corp. v. Nat'l
Constr. Rentals, Inc., No. H-13-2769, 2014 WL 1386300, at *4
(S.D. Tex. Apr. 9, 2014) ("[S]cienter allegations may be less
specific than allegations of the 'circumstances constituting
fraud,' because 'malice, intent, knowledge, and other conditions
of a person's mind may be alleged generally.'" (quoting Fed. R.
Civ. P. 9(b)); Daimlerchrysler Corp. & Chrysler, LLC v. Am.
Motors Corp., 94 U.S.P.Q.2d 1086, 2010 WL 1146943, at *3

10

(T.T.A.B. Mar. 25, 2010) ("[W]here a pleading asserts that a known misrepresentation, on a material matter, is made to procure a registration, the element of intent, indispensable to a fraud claim, has been sufficiently pled.").

In sum, GL Somersworth sufficiently alleged fraud based on information and belief.

### 2. Superior Rights

GL Newburyport argues that Count I fails because GL Somersworth does not allege that it had superior legal rights to the GLS mark.  GL Newburyport contends that the absence of such an allegation is fatal to a claim for fraud in the procurement of a trademark.  In response, GL Somersworth concedes that it does not allege that it had superior legal rights to the mark. It argues, however, that an allegation of superior legal rights is only required when a plaintiff alleges fraudulent procurement of a trademark on the basis of superior rights.  GL Somersworth further contends that its fraudulent procurement claim is not based on that theory and, therefore, an allegation of superior legal rights is not required.

In support of dismissal, GL Newburyport quotes the following language from Intellimedia Sports, Inc. v. Intellimedia Corp., 43 U.S.P.Q.2d 1203, 1997 WL 398344 (T.T.A.B. May 20, 1997):

>To withstand a motion to dismiss, a plaintiff claiming
>that the declaration or oath in defendant's
>application for registration was executed
>fraudulently, in that there was another use of the
>same or a confusingly similar mark at the time the
>oath was signed, must allege particular facts which,
>if proven, would establish that: (1) there was in fact
>another use of the same or a confusingly similar mark
>at the time the oath was signed; (2) the other user
>had legal rights superior to applicant's; (3)
>applicant knew that the other user had rights in the
>mark superior to applicant's, and either believed that
>a likelihood of confusion would result from
>applicant's use of its mark or had no reasonable basis
>for believing otherwise; and that (4) applicant, in
>failing to disclose these facts to the Patent and
>Trademark Office, intended to procure a registration
>to which it was not entitled.

1997 WL 398344, at *2.  As that language makes clear, however,

that is not the standard for every claim of fraudulent

procurement of a trademark.  Rather, that is the standard for a

claim of fraudulent procurement of a trademark based on the

theory that "there was another use of the same or a confusingly

similar mark at the time the oath was signed."  See Rogers v.

Quik Check Fin., Inc., No. CV03-1120-JE, 2004 WL 2026452, at *3

(D. Or. Sept. 9, 2004) ("Failure to inform the PTO of the

asserted rights of another person is fraudulent only if the

applicant knows that another person possesses a superior or

clearly established right to use the same or a substantially

identical mark." (internal quotation marks and citation

omitted)); see also Scooter Store, Inc. v. SpinLife.com, LLC,

777 F. Supp. 2d 1102, 1110 (S.D. Ohio 2011) (noting that the

standard set forth in Intellimedia applies when "a petitioner contend[s] that the declaration or oath in the defendant's application for trademark registration was fraudulent because it failed to disclose use by others").  Thus, although "the allegation of 'failure to disclose use by others' spawns the greatest number of fraud in the procurement" claims, there are other bases for such claims.  San Juan Prods., 849 F.2d at 472 (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31:21, at 614 (4th ed. 2006)).

In the counterclaims, GL Somersworth alleges several misrepresentations that GL Newburyport made in its submissions to the PTO that were relied on by the PTO in granting the trademark and incontestable status.  These include statements that GL Newburyport had used the mark continuously for five years prior to the submission of the trademark application and the affidavit of continued use, that the word "GENERAL" and the phrase "GENERAL LINEN SERVICE" were not generic and had gained a "secondary meaning" because of GL Newburyport's use of them, and that GL Newburyport was the substantially exclusive user of the mark in United States commerce.  These additional theories of fraudulent procurement do not necessarily require allegations of superior legal rights.  See Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 270-71 (2d Cir. 2011); Bay State Sav. Bank,

484 F. Supp. 2d at 220; see also 3 J. Thomas McCarthy, McCarthy
on Trademarks and Unfair Competition, § 19:48 (4th ed. 2008).

In its reply, GL Newburyport contends that to the extent
Count I is based on allegations that it fraudulently represented
to the PTO that it was entitled to an exclusive right to the GLS
mark despite knowing that others, including GL Somersworth, were
also using the mark, that claim is subject to the Intellimedia
standard and must be dismissed.  It argues that "[t]he
allegation that third parties were using the mark at the time
the oath was signed is immaterial unless those third parties had
superior rights."  Reply at 5.  That allegation, however, may be
relevant even absent a "superior rights" claim.  See, e.g., Fair
Isaac Corp. v. Experian Info. Solutions, Inc., 650 F.3d 1139,
1149 (8th Cir. 2011) ("FICO asserts that third-party use would
have been material only if another's rights were superior in the
mark, which TransUnion's were not . . . . Experian and
VantageScore [however,] presented a PTO expert, who testified
that a reasonable examiner would consider it important in
deciding whether to allow the registration to know whether
others were using 300 to 850 as a score range for credit scoring
services.").

Accepting as true all well-pleaded factual allegations in
the counterclaims and drawing all reasonable inferences in GL
Somersworth's favor, the counterclaims sufficiently allege

14

enough facts to set forth a claim for cancellation of a trademark on the basis of fraudulent procurement.  Whether GL Somersworth has any evidentiary support is a separate issue, one that is better addressed in a motion for summary judgment.  See Gaffrig Performance Indus., Inc. v. Livorsi Marine, Inc., 99 C 7778, 2001 WL 709483, at *4 (N.D. Ill. June 25, 2011) ("While fraud must be proven with clear and convincing evidence, claims of fraud on the PTO are far easier to plead than prove.").

### B. Count II – Genericness

GL Somersworth alleges that the GLS mark does not qualify for registration under the Lanham Act because it "is generic and/or has not gained any secondary meaning."  GL Newburyport argues that the counterclaim should be dismissed because GL Somersworth does not allege the existence of any evidence that would demonstrate that the mark is generic.

The parties appear to agree that "[w]hether a [mark] is [generic] is a question of fact . . . determined from the viewpoint of the relevant purchasing public." Scanlan, 2005 WL 670541, at *5 (internal quotation marks and citation omitted). They also appear to agree that to prove that a mark is generic, a plaintiff must put forth "[e]vidence of the public's understanding of the term [through] any competent source, such as consumer surveys, dictionaries, newspapers and other

publications." Id.; see also Colt Defense LLC v. Bushmaster
Firearms, Inc., 486 F.3d 701, 706 (1st Cir. 2007).

GL Newburyport argues that although GL Somersworth does not
have to provide evidence of the public's understanding with the
pleading itself, "it does have to allege that such evidence
exists." GL Newburyport has not cited, and the court is not
aware of, any case law imposing an obligation on a plaintiff
seeking to cancel a trademark on the grounds of genericness to
include in its pleadings an allegation of the existence of
evidence to show the public's understanding of a mark.[3]
Therefore, the lack of allegations concerning the type of
evidence that GL Somersworth will put forth to support its claim
for cancellation due to genericness is not grounds sufficient to
dismiss that claim.

C. Count III - Consumer Protection Act

In Count III, GL Somersworth alleges that: "By sending a
cease and desist letter when GL Newburyport knew that the
alleged [GLS] mark was generic and incapable of servicing [sic]
as an indicator of source, GL Newburyport engaged in a scheme of
advancing groundless trademark infringement claims based upon an

---

[3] "Descriptiveness and genericness are not claims for fraud
or mistake and are therefore outside the heightened pleading
requirements in Fed. R. Civ. P. 9(b)." Green Prods. Co. v.
Black Flag Brands LLC, No. C-10-2121, 2010 WL 3910336, at *4
(N.D. Cal. Oct. 4, 2010) (internal quotation marks and citation
omitted).

invalid, abandoned, generic, or otherwise unenforceable mark."
GL Newburyport moves to dismiss the claim, arguing that "[t]he
fact defendant received a cease and desist letter that it did
not take seriously falls woefully short of articulating a CPA
claim."  It further argues that "given the fact that defendant
did not take the letter seriously, how can it possibly claim to
have been deceived or otherwise injured?"

The New Hampshire Consumer Protection Act, RSA 358-A:2,
provides: "It shall be unlawful for any person to use any unfair
method of competition or any unfair or deceptive act or practice
in the conduct of any trade or commerce within this state."
Practices that violate the Act include "[u]sing deceptive
representations . . . in connection with goods or services."
RSA 358-A:2, VII.  Other commercial activity that is not
specifically listed may violate the Act if "the objectionable
conduct [ ] attain[s] a level of rascality that would raise an
eyebrow of someone inured to the rough and tumble of the world
of commerce."  Axenics, Inc. v. Turner Const. Co., 164 N.H. 659,
676 (2013).

GL Somersworth's Consumer Protection Act claim is, in
essence, that GL Newburyport attempted to enforce a fraudulently
obtained and generic trademark.  GL Newburyport cites no cases
or other authority to suggest that GL Somersworth's allegations
cannot support a Consumer Protection Act claim in New Hampshire.

17

"The New Hampshire Supreme Court frequently looks to interpretations of the Massachusetts Consumer Protection Act, M.G.L. [ch.] 93A, when interpreting the CPA." Forrester Envt'l Servs., Inc. v. Wheelabrator Tech., Inc., No. 10-cv-154-JL, 2012 WL 3420487, at *8 n.10 (D.N.H. Aug. 15, 2012) rev'd on other grounds 715 F.3d 1329 (Fed. Cir. 2013) (citing Chase v. Dorais, 122 N.H. 600, 602 (1982)). At least one court has held that a plaintiff's allegations that a competitor fraudulently obtained a trademark registration can, in certain circumstances, support a Chapter 93A claim. Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 221 (D. Mass. 2010) ("[D]efendants allege a fraudulent scheme under which plaintiffs engaged in misrepresentations, particularly with regard to the application that led to registrations 414 and 262, before the PTO that they knew or should have known would restrict defendants' rightful use of the drive term and/or the rightful use by others of the term in relation to automobile financing services thereby unfairly harming defendant and others."). In addition, although GL Newburyport contends that GL Somersworth has not alleged injury, "RSA 358-A:10 does not require a showing of actual damages for the claimant to be awarded the statutory minimum and attorney's fees." Becksted v. Nadeau, 155 N.H. 615, 621 (2007).

Accordingly, GL Newburyport has not shown grounds
sufficient to dismiss GL Somersworth's Consumer Protection Act
claim.[4]

### D. Count V – Unfair Competition Under the Lanham Act and Common Law

GL Somersworth alleges that GL Newburyport's actions,
including its alleged "advance of meritless claims in a scheme
to exact unfounded and baseless settlements from GL
Somersworth," constituted unfair competition in violation of the
Lanham Act and under New Hampshire common law.  GL Newburyport
moves to dismiss Count V, but does not provide any meaningful
argument as to that count.  GL Newburyport argues simply that to
the extent Count V is based on allegations that support the
fraudulent-procurement or Consumer Protection Act claim, it

---

[4] The court notes that cases interpreting the New Hampshire
Consumer Protection Act and cases interpreting the Massachusetts
Consumer Protection Act have held that a plaintiff cannot
maintain a Consumer Protection Act claim unless the plaintiff
was either injured by the defendant's alleged fraudulent
misconduct or was engaged in a commercial transaction with the
defendant.  See Forrester Envt'l Servs., 2012 WL 3420487, at *8
(interpreting R.S.A. ch. 358-A); Hunneman Real Estate Corp. v.
Norwood Realty, Inc., 765 N.E.2d 800, 810 (Mass. App. 2002)
(interpreting M.G.L. ch. 93A).  Although GL Newburyport argues
that GL Somersworth sustained no injury by any deceptive
conduct, it does not develop an argument as to whether the
parties engaged in a commercial transaction.  Therefore, the
court will not address that argument in this order.  See Higgins
v. New Balance Athletic Shoes, Inc., 194 F.3d 252, 260 (1st Cir.
1999); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

should be dismissed because those counts should also be
dismissed.

As discussed above, viewed in the light most favorable to
GL Somersworth, the counterclaims allege enough facts to support
a fraudulent-procurement claim and a Consumer Protection Act
claim.  Accordingly, GL Newburyport's motion to dismiss is
denied as to Count V.

### Conclusion

For the foregoing reasons, GL Newburyport's motion to
dismiss (document no. 28) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 10, 2014

cc:  Sara Yevics Beccia, Esq.
     Dennis J. Kelly, Esq.
     James F. Laboe, Esq.
     Paul R. Mastrocola, Esq.
     Joseph Gardner Mattson, Esq.
     Michael V. Samarel, Esq.
     Jeffrey C. Spear, Esq.